IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HEATHER LAYLA FOXX ZAGORSKY,

        Plaintiff,

vs.                                 Case No. 16-2636-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

(10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform

their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On March 5, 2015, administrative law judge (ALJ) Christina Young Mein issued her decision (R. at 39-48). Plaintiff alleges that she has been disabled since July 31, 2010 (R. at 39).

Plaintiff is insured for disability insurance benefits through December 31, 2015 (R. at 41). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 41). At step two, the ALJ found that plaintiff has severe impairments (R. at 41). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 41). After determining plaintiff's RFC (R. at 43), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 46). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 46-47). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 48).

**III. Did the Appeals Council err by failing to consider medical opinion evidence submitted to them after the ALJ decision?**

The ALJ's RFC findings limited plaintiff to simple, routine, repetitive tasks requiring no independent decision making and only occasional changes in the work setting. Plaintiff could tolerate occasional interaction with the public and coworkers (R. at 43).

Plaintiff's treating psychiatrist since 2006 is Dr. Kevin Mays (R. at 364). Dr. Mays filled out a mental RFC assessment on February 11, 2013, opining that plaintiff was moderately limited in 7 categories and markedly limited in 3 categories (R.

5

at 364-371).[2]  Dr. Mays also wrote letters on November 6, 2012, April 2, 2014, and on June 25, 2014 discussing plaintiff's inability to work (R. at 337, 407-408, 403).  The ALJ considered these opinions by Dr. Mays, but gave them little weight because the ALJ found that his opinions were inconsistent with his treatment notes and clinical findings.[3]  The ALJ stated that Dr. Mays found that plaintiff's mental status examinations were consistently normal, and the ALJ stated that Dr. Mays frequently indicated moderate improvement with medication.  The ALJ also noted that Dr. Mays does not discuss decompensation or bipolar cycling in his treatment notes (R. at 45).

The ALJ gave great weight to two non-examining medical sources, Dr. Cohen and Dr. Blum (R. at 45).  Dr. Cohen set out her opinions on March 6, 2013 (R. at 92-96), and Dr. Blum set out his opinions on May 31, 2013 (R. at 103-107).  The narrative discussion by Dr. Cohen and Dr. Blum are identical (R. at 93, 104), and does not mention or discuss the mental RFC evaluation by Dr. Mays, or the letter from 2012.  The letters written by

---

[2] The rating scale defined a moderate limitation as one that significantly affects but does not preclude the individual's ability to perform the activity. A marked limitation is defined as effectively precluding the individual from performing the activity in a meaningful way. The three areas of marked limitations, according to Dr. Mays, are: (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (2) the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) the ability to accept instructions and respond appropriately to criticism from supervisors (R. at 366-368).
[3] The ALJ had previously noted that Dr. Mays had consistently observed a euthymic mood, appropriate affect, intact memory, maintained attention, logical thought processes, average intellect, good reasoning, and realistic self-perception (R. at 44). The ALJ later noted that it appeared to her that plaintiff's mental conditions had been controlled with fairly conservative treatment (R. at 45).

Dr. Mays in 2014 were written after the mental RFC evaluations by Dr. Cohen and Dr. Blum in 2013.

After the ALJ decision on March 5, 2015, plaintiff submitted to the Appeals Council a letter from Dr. Mays, dated May 12, 2015. It states, in relevant part, as follows:

> This letter is regarding Mrs. Foxx-Zagorsky whom I have been treating since 2006…Unfortunately her condition has deteriorated over the years in spite of medication intervention. It has been brought to my attention through her attorney's letter…that there were some questions that needed to be clarified per the Administrative Law Judge and their review of my records.
>
> I think it is important to clarify that my treatment records are not generated in order for substantiation nor interpretation as to whether a person is able to work. My treatment notes are simply a snapshot for how persons reporting their symptoms at the time of their appointment. While it can include indicators of a person having distress in between appointments, the general mental status examination at the time of their appointment is not a cumulative review of how they have been for the previous one to three months in between appointments. Therefore I think interpreting it as such is erroneous and it [is] not what it is intended to accomplish. It assumes that the mental status examination was what the person is reporting and/or showing at the time of their appointment.
>
> Therefore the Administrative Law Judge's assessment that because the mental status examination at the time of appointment reflected euthymic mood and appropriate affect does not imply that this patient has

7

a sustained level affect at all times.
Furthermore, the notations are more in
reflection again of an aggregate as to how a
person is doing and if overall the patient
is doing well, there may be some subtle
changes or limited changes in the
medication.  There have actually been
numerous medication changes in her case over
the last several years.  There had been a
plateau reached where I believe that because
of different side effects from medication
that there were limitations generated from
going any further with medication.  I
believe it was answered appropriately when I
did her assessments for showing limitation
based on her capacity to sustain a 40-hour
week at the level that she had previously
been able to accomplish, which I still
believe is not going to happen and it is not
likely to happen in the future.

**Therefore the conclusion that I have been
showing moderate improvement with medication
but did not discuss decompensation or
bipolar cycling in the treatment notes is
false because there are notes reflecting the
fact that she has had decompensation on
numerous occasions over the years. So if the
question is asked, "Do I think the person is
going to have marked limitations and
challenges to successfully meet a 40-hour
week without significant impairments from
the Mood Disorder", I believe wholeheartedly
that that is accurate and that this
individual does have a diagnosis of
psychiatric illness which has included
psychotic mood cycles requiring
hospitalization, that her chances of being
able to obtain and sustain gainful
employment are markedly limited**, and I
believe she needs to have a further review
on the context of the Administrative Law
Judge who interpreted my notes and
furthermore they don't agree that they match
up, that she should have a thorough
evaluation through an independent party if
they believe that would be more favorably

8

>     warranted and accepted by the Administrative
>     Law Judge.

(R. at 29-30, emphasis added).

The Appeals Council noted that they received a letter from Dr. Mays dated May 12, 2015, but stated that this information "is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 5, 2015" (R. at 2).[4]

The basic principle, derived from the relevant regulations, is well-established: the Appeals Council must consider additional evidence offered on administrative review-after which it becomes part of the court's record on judicial review-if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision. Krauser v. Astrue, 638 F.3d 1324, 1328 (10th Cir. 2011). Where the Appeals Council rejects new evidence as non-qualifying, and the claimant challenges that ruling on judicial review, it is a question of law subject to the court's de novo review. Id.

The letter from Dr. Mays dated May 12, 2015 is clearly new evidence, it is clearly material, and it is clearly related to the period on or before the date of the ALJ's decision. This letter from Dr. Mays clearly relates to plaintiff's treatment

---

[4] Defendant erred in her brief when she stated that the Appeals Council admitted this letter into the record, but found that it did not provide a basis for changing the ALJ's decision (Doc. 7 at 4, 7 n.3). The Appeals Council did admit into evidence and consider some additional evidence submitted to them by the plaintiff (R. at 5-6), but refused to consider other evidence submitted to them because it was about a later time, including the letter of Dr. Mays dated May 12, 2015 (R. at 2).

records prior to the date of the ALJ decision, the ALJ's interpretation of those records, and the rationale for the ALJ's decision. The Appeals Council decision that this letter is about a later time is clearly erroneous. Because the evidence qualifies (as new, material, and related to the period on or before the date of the ALJ's decision), and the Appeals Council failed to consider it, the case should be remanded for further proceedings. Chambers v. Barnhart, 389 F.3d 1139, 1142 (2004).

Furthermore, the court cannot say that the failure to consider this additional opinion evidence from plaintiff's treatment provider is harmless error.[5] The May 12, 2015 letter from Dr. Mays, which directly challenges the findings of the ALJ and the ALJ's interpretation of the treatment notes from Dr. Mays, provides a clear basis for changing the ALJ's decision. Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).

In the case of Wilson v. Colvin, Case No. 12-1365-JWL, 2014 WL 1689293 (D. Kan. April 29, 2014), Ms. Martin, a psychiatric nurse-practitioner, had provided a medical source statement, but the ALJ accorded it little weight. Instead, the ALJ gave great weight to the opinions of state agency consultants. 2014 WL

---

[5] Courts should apply the harmless error analysis cautiously in the administrative review setting. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way. Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

1689293 at *4.  Ms. Martin then submitted an opinion letter explaining and clarifying her earlier statement; this letter was first submitted to the Appeals Council.  Plaintiff also submitted to the Appeals Council a letter from Mr. Bremyer, plaintiff's treating therapist, which affirmed the opinions of Ms. Martin.  2014 WL 1689293 at *5-6.  The court held that this additional evidence, including Ms. Martin's explanation, if accepted, provides material information which would significantly alter the ALJ's decision, for it tends to negate much of the ALJ's basis for discounting the opinions of Ms. Martin and Dr. Schwartz.  The court noted that if those opinions are not properly discounted, disability is the only remaining option.  The court indicated that it could not weigh this evidence in the first instance, and remanded the case in order for the Commissioner to consider the letters provided to the Appeals Council and to determine what weight should be accorded to the medical opinions in light of all the record evidence. 2014 WL 1689293 at *6.  See Gatewood v. Colvin, Case No. 13-1339-SAC (D. Kan. Sept. 30, 2014; Doc. 26 at 6-12)(a sentence six remand case; the court found that a subsequent statement from Dr. Davis provided material information which, if accepted, would significantly alter the ALJ's decision, for it tended to negate much of the ALJ's basis for discounting the earlier opinions expressed by Dr. Davis).

11

As was the case in Wilson and Gatewood, the 2015 letter from Dr. Mays, if accepted, provides material information which could significantly alter the ALJ's decision. In general, the opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). Dr. Mays, in his letter of May 12, 2015, clearly challenges the findings of the ALJ and her interpretation of the treatment notes by Dr. Mays. The ALJ, after rejecting the opinions of Dr. Mays, gave greater weight to two non-examining medical sources who did not see many, if not all, of the letters and mental RFC findings from Dr. Mays. As noted above, their opinions are entitled to the least weight of all.

The May 12, 2015 letter from Dr. Mays, if accepted, provides material information which would significantly alter the ALJ's decision, for it tends to negate much of the ALJ's basis for discounting the opinions of Dr. Mays. This court cannot weigh the evidence in the first instance. Therefore,

12

this case shall be remanded in order for the Commissioner to consider the May 12, 2015 letter from Dr. Mays, and determine what weight to accord that letter in light of all the record evidence.[6]

**IV. Did the ALJ err in evaluating plaintiff's credibility?**

Plaintiff has also asserted error by the ALJ in evaluating plaintiff's credibility. The court will not address this issue because it may be affected by the ALJ's resolution of the case on remand after the ALJ considers the May 12, 2015 letter from Dr. Mays (and the October 12, 2015 letter from plaintiff's therapist, Ms. Lewis). See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 8th day of September 2017, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

[6] Although not raised in the briefs, the court would note that plaintiff also submitted to the Appeals Council a letter, dated October 12, 2015, from Ms. Williams, plaintiff's treating therapist since 2004. Ms. Williams also opines that plaintiff would be unlikely to sustain employment due to the significant limitations caused by her illness (R. at 8-9). Because this case is being remanded in order for the Commissioner to consider the May 12, 2015 letter from Dr. Mays, the Commissioner should also consider the relevance and relative weight to accord to his opinion from a treating therapist in light of the opinions of Dr. Mays and the other record evidence.